```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
```

DEBRA L. CHISHOLM,

                Plaintiff,

vs.                                  Case No. 13-1276-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On August 2, 2012, administrative law judge (ALJ) Joseph R. Doyle issued his decision (R. at 14-23). Plaintiff alleges that she had been disabled since March 1, 2010 (R. at 14). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 16). At

4

step two, the ALJ found that plaintiff had the following severe impairments:  degenerative disc disease with spinal stenosis and arthralgias (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17).  After determining plaintiff's RFC (R. at 18), the ALJ determined at step four that plaintiff could perform past relevant work as a hostess, reception clerk, office clerk, and toll collector (R. at 20).  In the alternative, at step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 22-23).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III.  Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20

C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence.  Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ found that plaintiff had the RFC to perform light work; she could lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently. Plaintiff can stand or walk up to 6 hours, and sit for 6 hours in an 8 hour workday. Plaintiff cannot climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs, stoop, kneel, crouch, crawl and balance. Plaintiff is also limited to jobs that do not involve concentrated exposure to extreme vibration (R. at 18).

Dr. Lewis, plaintiff's treating physician, stated on May 26, 2010 that it is certainly a bad idea for plaintiff to do work that involves standing and/or lifting (R. at 390). On February 28, 2012, he stated the following:

> She does have spinal stenosis that is proven radiographically and which requires daily pain management. At times she has been required to use a walker when the condition has flared. It is my opinion that less than full time employment is better for her with regard to this diagnosis. I do not expect that she would be able to do more than 2 hours of standing and walking within an 8 hour work day due to exacerbated pain. She should also not lift more than 10 pounds and could only reasonably be expected to lift equal to or less than 10 pounds less than 2/3 of an 8 hour day. It is likely that she will need to miss more than 3 days per month due to increased severity of pain. Continuing in the same body position for an extended period of time often flares her spinal stenosis pain so any employment situation will likely need to provide the flexibility for her to recline or lie down during frequent breaks to assist in alleviating pain and fatigue.

7

(R. at 407).

The ALJ gave little weight to this opinion, stating that it is not supported by the "thin" record of treatment, and it is generally inconsistent with physical findings of record and with the fact that she is still able to work part-time (R. at 19-20).

The record also contains a physical RFC assessment from Dr. Vopat, dated July 16, 2010 (R. at 391-398). Among his findings, Dr. Vopat opined that plaintiff could only stand/walk for 2 hours in an 8 hour workday (R. at 392). Dr. Vopat stated that plaintiff would be capable of performing at this RFC level by March 1, 2011 (R. at 393). Dr. Parsons affirmed this assessment on March 11, 2011 (R. at 406). The ALJ found that plaintiff's functional limitations are less significant than those set forth in the assessment, and gave only limited weight to the assessment (R. at 20).

The ALJ found that plaintiff could stand or walk for up to 6 hours in an 8 hour workday, and could therefore perform light work (R. at 18). Jobs in this category generally require a good deal of walking or standing. 20 C.F.R. § 404.1567(b). However, the opinions of all three medical sources state that plaintiff can only stand/walk for 2 hours in an 8 hour workday (R. at 392, 406, 407). There is no medical opinion or medical evidence

indicating that plaintiff can stand/walk for 6 hours in an 8 hour workday.

The first problem in the ALJ's analysis is that the ALJ rejected all three medical source opinions in finding that plaintiff could stand/walk for 6 hours in an 8 hour workday. The ALJ does not cite to any medical opinion in support of this finding. However, an exact correspondence between a medical opinion and the RFC is not required. In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file. That said, in cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance. Wells v. Colvin, 727 F.3d 1061, 1071-1072 (10th Cir. 2013) (in Wells, the ALJ rejected 3 medical opinions, finding that they were inconsistent with the other evidence in the file; the court directed the ALJ, on remand, to carefully reconsider whether to adopt the restrictions on plaintiff's RFC detailed in the medical opinions, or determine whether further medical evidence is needed on this issue).

The ALJ asserts that the medical evidence does not support the existence of limitations greater than those reported in the ALJ's RFC findings (R. at 19).  However, the ALJ cites to no medical opinion evidence which indicates that the medical evidence in this case would support a finding that plaintiff can stand/walk for 6 hours in an 8 hour workday.  Nor does the ALJ cite to any other evidence in this case that would support a finding that plaintiff can stand/walk for 6 hours in an 8 hour workday.  In fact, all three medical sources, based on their treatment of the plaintiff, or their review of the medical and other evidence in this case, indicate that plaintiff is limited to standing/walking for only 2 hours in an 8 hour workday.

In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports, and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004); McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).  The ALJ does not cite to any medical or other evidence that contradicts the opinions of three medical sources, including plaintiff's primary care physician, that plaintiff can only stand/walk for 2 hours in an 8 hour workday.

10

Second, the ALJ also discounted the opinions of Dr. Lewis because they are inconsistent with the fact that she continues to work part-time (R. at 19-20). The ALJ also discounts plaintiff's credibility because of the fact that she is working part-time preparing food at a cafeteria (R. at 19).

Plaintiff testified that she presently works at Cessna Elementary School serving lunch from 11:00 a.m. to 1:45 p.m. Plaintiff stated that they start serving lunches at 11:30, when they serve the first class, which takes about 15 minutes. Then she has a 15 minute break to sit down if she needs to. About every 15 minutes, another class comes in; plaintiff stands and serves lunches. She testified that every 15 minutes, she gets a 15 minute break to sit down and "just relax." When she gets home, she lies down to relax (R. at 34-35, 53).[1]

The ALJ's statement that plaintiff is working part-time at a cafeteria preparing food fails to acknowledge her testimony of the limited time span of her work (2 hours and 45 minutes), and the fact that she gets a break every 15 minutes to sit down and just relax. An ALJ cannot use mischaracterization of a claimant's activities by selective and misleading evidentiary review to discredit his/her claims of disabling limitations. Sitsler v. Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan.

---

[1] Plaintiff also testified to a job held in 2011 prepping food in a kitchen in the evenings, working 2-4 hours a night for 3-4 days a week. In that job, she testified that she received breaks about every 15 minutes or when she needed to take a break (R. at 56-58).

11

10, 2011); see Sisco v. U.S. Dep't of Health & Human Services, 10 F.3d 739, 742-43 (10th Cir. 1993)(ALJ took claimant's testimony out of context, selectively acknowledged only parts of her statements, and presented his findings as accurate reflections of her statements); see also Talbot v. Heckler, 814 F.3d 1456, 1462, 1464 (10th Cir. 1987)(ALJ improperly based conclusion claimant could do light work on mischaracterization of his activities).  Nothing in plaintiff's description of this job is facially inconsistent with the limitations set forth by her treating physician, Dr. Lewis,[2] or with the opinions of all three medical sources that plaintiff can only stand/walk for 2 hours in an 8 hour workday.

Third, the ALJ relied on the "thin" record of medical treatment to discount the opinions of Dr. Lewis (R. at 19). Furthermore, in the ALJ's credibility analysis, the ALJ stated that although financial limitation is stated as a factor at the hearing, there is little evidence of treatment for her conditions.  The ALJ noted that plaintiff has not obtained diagnostic testing suggested by her physician or x-rays of her knees or recent images of her back, has not undergone surgery, has not received epidural injections, and has a history of infrequent visits to her doctor.  The ALJ concluded that "these

---

[2] The treatment records of Dr. Lewis indicate that Dr. Lewis was aware that plaintiff was employed for the Wichita School District in the food department for a couple hours a day (R. at 409).  This treatment record is dated February 27, 2012, or one day before Dr. Lewis offered his opinion regarding plaintiff's limitations (R. at 407, 409).

12

facts tend to weaken claimant's allegation of disability and subtract from the overall credibility of the claimant's statements" (R. at 19).

While failure to seek treatment may be probative of severity, the ALJ has a basic duty of inquiry to ask the plaintiff why he/she did not seek treatment, or why it was sporadic.  Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept. 17, 2003).  Similarly, SSR 96-7p states the following:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); <u>cited with approval in</u> <u>Madron v. Astrue</u>, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009). The fact than an individual may be unable to afford treatment and may not have access to free or low-cost medical service is a legitimate excuse. <u>Madron</u>, 311 Fed. Appx. at 178; SSR 96-7p, 1995 WL 374186 at *8.

On May 24, 2010, the medical record states the following: "needs further workup of possible stenosis seen of plaintiff on plain film in [M]arch, but no insurance" (R. at 416). On May 26, 2010, Dr. Lewis stated that plaintiff had spinal stenosis which would certainly be a cause for dysfunction and pain. He noted that she needs more extensive x-ray and testing which at present is "cost prohibitive for her because of her insurance situation" and that plaintiff had elected to wait until she has obtained benefits to cover such services (R. at 390). Again, on February 27, 2012, the medical records note that she has no insurance, and needs a pelvic exam, mammogram, colonoscopy, and bloodwork but refuses due to expense and will plan to do these things when she has insurance support (R. at 411).

At the hearing, plaintiff testified that Dr. Lewis had other options he wanted to do, but she can't afford to do anything right now because she has no medical insurance; plaintiff indicated it had been over five years since she had insurance (R. at 65). The record provided ample evidence that

plaintiff's lack of treatment was due to her inability to afford treatment.  The ALJ therefore discounted plaintiff's credibility and the opinions of Dr. Lewis without taking into consideration the reasons for the lack of treatment, as required by the regulations and case law.

Fourth, the ALJ also discounts plaintiff's credibility because she had not had surgery, and had not received epidural injections.  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers and other medical sources.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004)(ALJ noted that claimant did not require assistive device for neck; court stated there was no evidence that a physician recommended such a device, or suggested that one would have provided relief).  An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  <u>Bolan v. Barnhart</u>, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  In the absence of any medical opinion or other evidence indicating that surgery or epidural injections were recommended or would have provided relief, the ALJ overstepped his bounds into the province of medicine.  <u>Miller v. Chater</u>, 99 F.3d 972, 977 (10th Cir. 1996).

15

In summary, the ALJ made RFC findings contrary to all three medical source opinions. There is no medical opinion or other evidence that supports a finding that plaintiff can stand/walk for 6 hours in an 8 hour workday, or that contradicts the opinions of three medical sources that plaintiff can only stand/walk for 2 hours in an 8 hour workday. Second, in relying on plaintiff's part-time work to discount the opinions of Dr. Lewis, and to discount plaintiff's credibility, the ALJ mischaracterized plaintiff's part-time work by failing to acknowledge the serious limitations in that part-time work (works only 2 hours and 45 minutes, and gets a break every 15 minutes to sit down and rest). Third, the ALJ relied on plaintiff's lack of treatment as a basis for discounting both plaintiff's credibility and the opinions of Dr. Lewis. However, the ALJ erred by failing to take into consideration plaintiff's inability to afford treatment, even though the medical records and her testimony indicated that an inability to pay or lack of insurance was the basis for a lack of treatment. Fourth, the ALJ discounted plaintiff's credibility because she had not had certain types of treatment. However, the ALJ erred by overstepping his bounds into the province of medicine in the absence of any evidence that such treatment was advised or would have provided relief. For all these reasons, the court finds that substantial evidence does not support the ALJ's RFC

16

findings and determination that plaintiff can perform past work or other work in the national economy. This case shall be remanded in order for the ALJ to properly evaluate the medical evidence (and if necessary, to obtain additional medical evidence or medical opinion evidence), and to properly evaluate plaintiff's credibility.

### IV. Other issues raised by plaintiff

Plaintiff has raised other issues. The court will not address the remaining issues in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ properly evaluates the medical evidence, the medical opinion evidence, and plaintiff's credibility, and makes new RFC findings. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

However, the court will address the issue of plaintiff's daily activities. The ALJ stated that plaintiff's daily activities are not as limited as one would expect with disabling limitations. The ALJ then proceeded to note that plaintiff does housework, shops, cooks, tends to her personal care needs and manages her finances (R. at 19). According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2013 at 399).

17

Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**. As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't

of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.**'" Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.**

Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

The fact that plaintiff can perform housework, shop, cook, tend to personal care needs, and manage her finances do not

19

qualify as the ability to do substantial gainful activity. Therefore, on remand, the ALJ should examine plaintiff's daily activities in light of the above regulations and case law, and also take into consideration the limitations plaintiff noted regarding those activities.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 24th day of September 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge